UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES WOELFEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-01143-JES-JEH |
| | ) |
| BARD PERIPHERAL VASCULAR, INC., | ) |
| | ) |
| Defendant. | ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant Bard Peripheral Vascular, Inc.'s (Bard) Motion to Dismiss (Doc. 4). Plaintiff Woelfel filed a Response (Doc. 11). This order follows.

### BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiff Woelfel suffers from end stage kidney disease. Doc. 1-1, at 10. He was treated for this disease with dialysis, but this required the surgical insertion of a catheter for ease of access for dialysis treatment. *Id.* at 10-11. On February 8, 2018 Woelfel underwent the surgery to insert the catheter at Saint Joseph Medical Center. *Id.* at 11. The catheter was manufactured by the Defendant. *Id.* On about February 10, 2018 Woelfel began experiencing severe adverse reactions. *Id.* After tests, medical staff concluded that the catheter was contaminated, and that this contamination was causing the reactions. *Id.* This infection caused Woelfel to have another procedure and to remain in hospital care for a longer period of time. *Id.*

Plaintiff Woelfel argues that the above facts bring about the "only conclusion" that Bard caused the pain he suffered. Doc. 1-1, at 12. He filed his claim *pro se* against Bard in the

1

McLean County Circuit Court of Illinois on January 16, 2020 requesting $10,000,000 in compensatory damages and $10,000,000 in punitive damages. *Id.* Defendant Bard filed a notice of removal pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446. Doc. 1, at 1. Once removed, Bard filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) supported by a Memorandum. *See* Doc. 4; Doc. 5.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendant Bard files a Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6) supported by a Memorandum. Doc. 4; Doc 5. In the Memorandum Bard argues Woelfel failed to allege necessary facts to claim any form of negligence or other type of product liability claim against them. Doc. 5, at 5. Bard supports this argument by claiming Woelfel's claim failed to meet pleading standards in Illinois law; and federal law, and that other Seventh Circuit District Courts have ruled consistent with their argument that this claim "presents no factual detail how the

[product] was defective . . . ." Doc. 5, at 7 (citing *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 888-89 (N.D. Ill. 2014)). Therefore, Bard argues, Woelfel's claim fails to put them on proper notice of the basis of his claim, and his claim should be dismissed. *Id.*

Plaintiff Woelfel argues that his claim was sufficient when he wrote "after several courses of blood work Center doctors . . . determined that the cause of Plaintiff's severe reaction was based upon the fact that Defendant's catheter was contaminated." Doc. 11, at 2 (citing Doc 1-1, at 11.) Woelfel continues that he "does not know how he could be much clearer, . . . the infection was directly caused by Defendant's contaminated catheter according to his doctor and laboratory testing." Doc 11, at 3. Additionally, he argues, "the complaint was 'short and plain,' where Plaintiff stated that the Defendant's medical device was contaminated when it was implanted." *Id.* at 4. He continues, "While all surgery involved the risk of infection, in this case the infection was directly caused by Defendant's contaminated catheter according to his doctor and medical laboratory testing." *Id.* at 3. Woelfel concludes that he would be willing to amend his complain if needed. *Id.* at 5.

It is appropriate to hold *pro se* litigants to a less stringent standard than if a claim were filed by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). This is done "to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). This is to ensure that *pro se* litigant's pleadings are read "as to do substantial justice." Fed. R. Civ. P. 8(f). However, there are limits on this liberal reading. *See Kiebala v. Boris*, 928 F.3d 680, 684-85 (7th Cir. 2019).

For a pleading to survive a motion to dismiss it must give "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). If the pleading

3

gives rise to an "obvious alternative explanation . . . then the complaint may stop[ ] short of the line between possibility and plausibility of 'entitle [ment] to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 557, 567). The Seventh Circuit Court of Appeals has interpreted *Twombly* and *Iqbal* to require "the plaintiff provide some specific facts to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The plaintiff must present "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir.2010).

      Applied to product liability claims, the above standards mean that the plaintiff must show a plausible connection between the elements of the offense of some form of product liability and the defendant. A product liability case can proceed as either negligence based or based upon strict liability under Illinois law. For a case of strict liability, the elements under Illinois law are "(1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition." *McGinnis v. C.R. Bard, Inc.*, No. 16-1255, 2017 WL 10085230, at *2 (C.D. Ill. Jan. 24, 2017) (citing *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 543, 901 N.E.2d 329, 345 (2008)). Additionally, for a negligence product liability claim, "a plaintiff must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages. *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 82, 955 N.E.2d 1138, 1153–54 (citing *Heastie v. Roberts*, 226 Ill.2d 515, 556, 315 Ill.Dec. 735, 877 N.E.2d 1064 (2007)).

Plaintiff fails to allege facts necessary to plausibly allege either of the types of product liability claims under Illinois law. For strict liability cases, Woelfel fails to assert that the product *as it was when it left Bard* proximately caused the injury. For negligence, Woelfel fails to assert any plausible basis for Bard's breach or how the injury was related to said breach. He fails to give facts indicating the plausibility that the catheter was contaminated when it left Bard's control.

In this case there is an obvious alternative to Plaintiff's claim—as *McCauley* suggested leans the analysis in favor of dismissal—, either normal risks of infection from surgery or error of a member of the surgical team. Woelfel argues that the "medical device was infected when it was implanted," but that too has an obvious alternative of any of the myriad possible errors that could occur in a medical procedure, or even unavoidable infection risks.[1] Plaintiff offers no basis to the claim that the catheter Bard produced was deficient in any way; rather, he lays out a scenario with many plausible alternatives. While plaintiffs generally do not have to present facts which prove their claims in a pleading, they must present *something* which ties the story together. As of now, Plaintiff Woelfel only tells the Court that a catheter was contaminated; he does not allege any facts as to how that may have happened.

Woelfel claims that the testing from the Center staff revealed that the severe reaction was caused "by Defendant's contaminated catheter according to his doctor and medical laboratory testing." Doc. 11, at 3. Plaintiff does assert that "medical staff determined that the cause of the Plaintiff's severe reaction was based upon the fact that the Defendant's catheter was contaminated." Doc. 1-1, at 11. However, Woelfel does not explain if the staff members informed him where the contamination happened. It is entirely plausible that contamination happened at

---

[1] This Court is not ruling on the merits of a negligence claim against any medical staff or medical facility. This is merely demonstrating that Plaintiff's claim clearly fails the "obvious alternative" standard.

any point in the processes, and Plaintiff does not allege any facts to connect the contamination to Bard. So, it is *possible* that Bard had something to do with this unfortunate event, but not *plausible* based upon Woelfel's claim. It is merely speculative.

In light of Woefel's *pro se* status, it is understandable that a lay person would not fully understand the pleading technicalities as discussed above. Therefore, it is appropriate to offer room to amend rather than simply dismissing the case.

## CONCLUSION

For the reasons set forth above, Defendant Bard's Motion (Doc. 4) to Dismiss is granted. Plaintiff Woelfel is granted leave to amend his complaint within 14 days of this order, if he has good faith basis for doing so. If no amended complaint is filed after 14 days, this action will be dismissed with prejudice.

Signed on this 21st day of September 2020.

s/ James E. Shadid
James E. Shadid
United States District Judge
